**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| CHUKWUDI BRUNO NJOKU, <br> an individual, | ) <br> ) <br> ) | |
| PLAINTIFF, | ) <br> ) | Case No._____ |
| vs. | ) <br> ) | DEFENDANT TO BE SERVED: <br> 5200 HAMPTON, LLC |
| 5200 HAMPTON, LLC, | ) <br> ) <br> ) <br> ) | C/O Thomas L. Milford <br> 13100 Manchester Rd. Suite 235 <br> St. Louis, MO 63131 |
| DEFENDANT. | ) | |

**COMPLAINT**

COMES NOW, Chukwudi (Chudi) Bruno Njoku, (hereinafter "Plaintiff"), by and through the undersigned counsel, and hereby files this complaint against Defendant, 5200 Hampton, LLC, (hereinafter "Defendant") for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*., (hereinafter the "ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter the "ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

**JURISDICTION**

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq*., based upon Defendant, 5200 Hampton, LLC (hereinafter "Property Owner's") failure to remove physical barriers to access and violations of Title III of the ADA *(see also*, 28 U.S.C. §§ 2201 and 2202).

**PARTIES**

2.      Plaintiff, Chudi Njoku is and has been at all times relevant to the instant matter, a natural person residing in St. Louis, St. Louis County, Missouri.

3. Plaintiff is disabled as defined by the ADA; however, is *sui juris*.

4. Plaintiff is paralyzed and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5. Plaintiff uses a wheelchair for mobility purposes.

6. Defendant Property Owner is a limited liability company and transacts business in the State of Missouri and within this judicial district.

7. Defendant Property Owner is the owner of the real property and improvements which are the subject of this action located at 5200 Hampton, LLC (hereinafter "Subject Property").

8. The Subject Property's Parcel ID is listed as 5698-9-101.000 at the St. Louis City Recorder of Deeds.

9. The Subject Property provides a public accommodation and is a service establishment.

10. Upon information, the Subject Property has been altered since 2010, as defined by the ADA.

11. Upon information and belief, AED Enterprises, LLC is the lessee/tenant of the Subject Property and is the operator of the business advertised as "Dewey's Pizza," located on the Subject Property.

12. AED Enterprises, LLC or "Dewey's Pizza" (hereinafter the "Lessee") is registered with the State of Missouri and is a business offering creative pizza and salad combinations and local craft beer to the public as part of its regular commercial operations.

## VENUE

13.     All events giving rise to this lawsuit occurred in the State of Missouri. Venue is proper in this Court as the Subject Property is located in the Eastern District of Missouri.

## FACTUAL ALLEGATIONS

14.     On or about March 5, 2026, Plaintiff traveled to  the intention of being a customer; however, the Subject Property the Subject Property lacked any designated accessible parking, access aisles, an accessible route to the entrance, thereby deterring Plaintiff from safely accessing and fully enjoying the goods and services offered at the Property.

15.     In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

16.     Defendant, 5200 Hampton, LLC, as Property Owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Subject Property. Even if there is a lease between Defendant, 5200 Hampton, LLC, and a lessee/tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between

the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns. *See* 28 CFR § 36.201(b).

17.     The Plaintiff's ability to access Dewey's Pizza, and to fully and equally enjoy the goods, services, food, beverages, facilities, privileges, advantages, and/or accommodations provided at the Subject Property, has been denied and/or restricted as a result of his disabilities. Absent intervention requiring the Defendant to eliminate the physical barriers to access and rectify the ADA violations detailed in this Complaint, the Plaintiff will continue to experience such denial and/or limitations in the future.

18.     The Plaintiff resides 3.5 miles from the Subject Property and passes by at least once per week while running errands, visiting family and friends in the city, or seeking dining options.

19.     The Plaintiff has previously visited the Subject Property, both in an attempt to be a customer and as an independent advocate for individuals with disabilities, and personally encountered numerous barriers to access as detailed in this Complaint. The Plaintiff has suffered legal harm and injury and will continue to suffer such harm and injury unless all illegal barriers to access identified in this Complaint at the Subject Property are removed.

20.     The Plaintiff intends to return to the Subject Property within six months following the removal of the barriers to access outlined in this Complaint, thereby ensuring the Property is fully accessible to individuals who use wheelchairs. The purpose of the visit is to purchase goods and services sold, and to verify the completion of accessibility improvements, assess the timing of such modifications, and further solidify the Plaintiff's standing in this litigation.

21.     While the Plaintiff plans to return to the Property to procure goods and/or services as a customer, he has no intention of subjecting himself to the persistent barriers to access or

engaging in the futile act of visiting the Subject Property, which he is aware contains numerous and enduring impediments to accessibility.

22.     The Plaintiff became cognizant of all identified barriers prior to filing this Complaint. Given the Plaintiff's intention to revisit the Property within six months, or sooner upon the removal of the barriers to access, either as a patron or as an advocate for individuals with disabilities, there exists a significant likelihood that, while a specific barrier may not impede one visit, the Plaintiff could encounter other barriers identified in the Complaint during subsequent visits. For instance, the unavailability of one accessible parking space could necessitate reliance on an alternative accessible space in the future. Consequently, the removal of all barriers to access outlined in this Complaint is imperative to safeguard the Plaintiff from exposure to such impediments and to prevent further violations of legally protected rights.

23.     The Plaintiff's inability to fully access the Subject Property and its establishments in a safe and equitable manner—thereby precluding the free and equal enjoyment of the goods and services offered, both presently and in the foreseeable future—constitutes an injury in fact as recognized by Congress and consistently affirmed by Federal Courts as meeting the criteria for such injury.

24.     The Defendant has engaged in discriminatory practices against the Plaintiff and other individuals with disabilities by denying them access to, and the full and equal enjoyment of, the goods and services provided at the Subject Property/the Facility, in violation of 42 U.S.C. § 12182. *et seq*. Furthermore, the Defendants have failed to remove architectural barriers as mandated by 42 U.S.C. § 12182(b)(2)(A)(iv). Given the length of time the Defendants have been in violation and the egregiousness of these violations, their actions reflect a continued disregard for the rights of individuals with disabilities. Unless and until the Defendants are compelled to

eliminate all physical architectural barriers present at, including but not limited to those detailed in this Complaint, they will persist in discriminating against the Plaintiff and others with disabilities, thereby preventing the Subject Property from being accessible to and safely usable by individuals with disabilities, including the Plaintiff.

25.    Under the Americans with Disabilities Act (ADA), individuals who have been subjected to discrimination due to architectural barriers or other violations of Title III have a private right of enforcement pursuant to 42 U.S.C. § 12188(a). This provision empowers aggrieved persons to bring civil actions to obtain injunctive relief, including orders requiring the removal of barriers to access, the modification of policies, and the implementation of measures to ensure compliance with the ADA. Furthermore, 28 C.F.R. § 36.501 reaffirms that private individuals may file lawsuits to address such violations. The Plaintiff, as a person with disabilities who has been denied full and equal access to the goods, services, and accommodations provided at the Defendant's Subject Property, invokes this private right of enforcement to ensure the Defendant fulfills its legal obligations under the ADA.

**COUNT I**
**VIOLATIONS OF THE ADA AND ADAAG**

26.    On July 26, 1991, the United States Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

27.    Congress found, among other things, that:

(i)    some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persist in such critical areas as employment, housing public accommodations, education, transportation,

communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)      the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) – (3), (5) and (9).

28.     The United States Congress explicitly stated that the purpose of the ADA was to:

(i)      provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable, standards addressing discrimination against individuals with disabilities; and

* * * * *

(iii)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

29.     The United States Congress granted places of public accommodation a period of one and a half years from the enactment of the ADA to comply with its requirements.

30.     Public accommodations were generally required to comply with the ADA regulations by January 26, 1992, under 28 C.F.R. § 36.508(a) and 42 U.S.C. § 12181 et seq.

31.     However, the one-year extension to January 26, 1993, applied specifically to small businesses that met the criteria of having 10 or fewer employees and gross receipts of $500,000 or less. This extension was intended to ease the burden on small businesses with limited resources while still requiring eventual compliance.

32.     Under the mandates of 42 U.S.C. § 12134(a), the Department of Justice was directed to issue regulations to implement the Americans with Disabilities Act (ADA). The final federal regulations, which are codified in 28 C.F.R. Part 36, were published on July 26, 1991. These regulations set forth the requirements for compliance with Title III of the ADA, governing places of public accommodation and commercial facilities.

33.     The 1991 ADA Standards for Accessible Design (ADAAG) were the original regulations issued under the authority of 42 U.S.C. § 12186(b) and promulgated by the Department of Justice (DOJ) as part of the Americans with Disabilities Act (ADA). These standards established the foundational requirements for ensuring accessibility in public accommodations and commercial facilities, addressing features such as accessible parking spaces, paths of travel, entrances, restrooms, and signage. Compliance with these standards was mandatory for any construction or alteration projects initiated on or after January 26, 1992, as set forth in 28 C.F.R. Part 36, Appendix D. The 1991 Standards provided precise technical and scoping specifications to eliminate barriers and ensure individuals with disabilities have equal access to facilities.

34.     The 2010 ADA Standards for Accessible Design (ADAAG) were developed under the same statutory authority, 42 U.S.C. § 12186(b), and promulgated as part of an updated regulatory framework by the DOJ. These updated standards, codified in 28 C.F.R. Part 36, Subpart D, became effective for new construction or alterations initiated on or after March 15, 2012. The 2010 standards built upon the 1991 guidelines by incorporating advancements in accessibility practices and addressing gaps in the original standards. They introduced additional requirements for recreational activities, swimming pools, and public playgrounds and revised technical specifications for parking, signage, and accessible routes.

35.	In instances where the 2010 standards do not apply, the 1991 standards remain the governing authority. All alleged violations outlined in this Complaint must be remedied to comply with either the 1991 or 2010 ADAAG standards. Ensuring the Property adheres to federal accessibility requirements.

36.	Under the ADA, compliance with the 2010 ADA Standards for Accessible Design is required for any public accommodation or commercial facility where alterations or updates have been made after March 15, 2012. Pursuant to 42 U.S.C. § 12183(a) and 28 C.F.R. § 36.406(a), any alterations made to a facility that affect usability must conform to the 2010 standards.

37.	Under 42 U.S.C. § 12183(a)(2) and 28 C.F.R. § 36.402(a), if alterations are made to a facility, those altered portions must comply with the current ADA standards to the "maximum extent feasible." Alterations are broadly defined to include changes to structural elements or configurations, such as renovations, remodeling, or upgrades to parking, pathways, restrooms, or other features impacting accessibility.

38.	Upon information and belief, the Defendant's property has undergone updates and alterations, the 2010 ADAAG standards govern the facility's compliance obligations. These standards were specifically implemented to ensure accessibility advancements were applied to facilities undergoing changes, reflecting both the intent of Congress and evolving accessibility needs. Allowing the Defendant to rely solely on the outdated 1991 standards, despite alterations, to the Property, would undermine the statutory purpose of the ADA and deprive individuals with disabilities, including the Plaintiff, of the equitable access guaranteed by law. Accordingly, the violations identified in this Complaint must be assessed under the more stringent and comprehensive requirements of the 2010 standards.

39.     The definition of "facility" is broadly defined and codified in 28 C.F.R. § 36.104, explicitly including all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property including the site where the building, property, structure, or equipment is located.

40.     The federal requirement to remove barriers where removal is readily achievable is detailed in 42 U.S.C. § 12182(b)(A)(iv), which states that discrimination includes "a failure to remove architectural barriers… in existing facilities… where such removal is readily achievable."

41.     This broad interpretation reflects the ADA's intent to address accessibility comprehensively, ensuring individuals with disabilities can access and use all parts of a property that serve or face the public. For Title III cases, this means any barriers in the listed elements of a "facility" must be removed if their removal is readily achievable or if alterations are made.

42.     The Subject Property must be, but is not, in compliance with the ADA and ADAAG, despite that it now has been 35 years since the United States Congress passed the ADA.

43.     Defendant Property Owner has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

44.     Defendant Property Owner will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant Property Owner is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

45.     The Plaintiff has identified a specific list of unlawful physical barriers, hazardous conditions, and ADA violations that were experienced and/or observed, which obstructed or

limited the Plaintiff's access to the Property. These barriers also impeded the Plaintiff's ability to fully and equally enjoy the goods, services, facilities, privileges, advantages, and accommodations offered at the Property. The identified barriers include, but are not limited to, the following:

**ACCESSIBLE ELEMENTS**

**<u>Parking Space Violations:</u>**

a.   **No Accessible Space:** The parking at Defendant's Subject Property lacks a designated accessible parking space, in violation of §§ 4.1.2 and 4.6.3 of the 1991 ADAAG and § 208.2 of the 2010 ADAAG. In addition, the parking spaces and asphalt in the area nearest the facility entrance maintain slopes ranging from 2.80% to 6.00%, exceeding the maximum allowable slope for accessible parking spaces, which must be no steeper than 1:48 (2.08%) in any direction, in violation of 2010 ADAAG § 502.4. The absence of compliant accessible parking—including required markings, access aisles, vertical signage, and compliant slope—creates a substantial architectural barrier that directly impedes Plaintiff's ability to safely access the premises in a wheelchair and denies Plaintiff the full and equal enjoyment of the goods, services, and accommodations offered to the public.

b.   **No Van-Accessible Parking:** The parking at the Facility serving the Subject Property fails to provide a required van-accessible parking space, in violation of §4.6 of the 1991 ADAAG and §§208.2.4 and 502 of the 2010 ADAAG. Under the ADA, as the Facility has 8 parking spaces, the designated accessible space must also be designated as van-accessible with the required width and access aisle to accommodate vehicles equipped with wheelchair lifts or ramps. Defendant's failure to provide a van-accessible space deprives Plaintiff and other individuals with

disabilities who may require additional clearance to safely deploy a lift or ramp of the ability to park and exit their vehicles, thereby creating a significant barrier to access. As a result, Plaintiff was effectively denied full and equal enjoyment of the goods, services, and accommodations offered at the Subject Property, in violation of the ADA.

c.   **Lack of ISA Signage:** The Subject Property fails to provide the required International Symbol of Accessibility ("ISA") signage identifying accessible parking spaces, in violation of §502.6 of the 2010 ADA Standards for Accessible Design. The ADA requires that all accessible parking spaces be marked with signage displaying the ISA symbol, installed at a height of at least 60 inches from the ground surface to the bottom of the sign, ensuring visibility for all users, including when vehicles are parked in adjacent spaces. Additionally, the required accessible parking space must also be designated as a van-accessible space pursuant to §208.2.4 of the 2010 ADA Standards, and such signage must explicitly include the phrase "Van Accessible." Defendants failed to install any compliant ISA signage or van-accessible signage, thereby preventing Plaintiff from identifying accessible parking and safely utilizing the Facility's parking area. This omission creates confusion, increases the risk of unsafe parking conditions, and effectively denies individuals with disabilities—including Plaintiff—full and equal access to the goods, services, and accommodations offered at the Subject Property.

**Accessible Aisle Violations:**

d.   **No Access Aisle in General:** The Subject Property has no accessible designated access aisle, in violation of §§4.1.2 and 4.6.3 of the 1991 ADAAG and §§502.1,

502.2, 502.3, 502.3.1, 502.3.2, 502.3.3, 502.3.4, 502.4, and 502.7 *et seq*. of the 2010 ADAAG. Due to the absence of a required access aisle Plaintiff was unable to safely exit. Without the clearance provided by a compliant access aisle, Plaintiff was forced to consider dangerous alternatives, such as maneuvering between parked vehicles, which poses a substantial risk of tipping, falling, or collision with moving traffic. Alternatively, Plaintiff was forced to park at a distance without any accessible route, resulting in physical exertion, delayed access, and substantial inconvenience. These barriers inflicted not only physical risk but also psychological harm, including a loss of independence, emotional distress, and humiliation—experiences that would not be endured by nondisabled patrons. The lack of access aisle effectively denied Plaintiff equal participation in the use and enjoyment of the facility, in direct violation of the Americans with Disabilities Act and its implementing regulations.

**Accessible Route Violations:**

e. **No Accessible Route from Facility Parking Lot:** The Subject Property fails to provide an accessible route connecting the parking at the Facility to the accessible entrance in violation of §§4.3.2 and 4.3.3 of the 1991 ADAAG and §§206.2.1, 206.2.2, 302.1, 402.2, 403.2, and 403.5.1 of the 2010 ADAAG. The ADA requires that at least one accessible route connects parking areas to all public areas and amenities, including points of sale or service, so that individuals with disabilities can access goods and services on an equal basis. Currently, the path from the parking facility to the facility entrance contains excessive and noncompliant slopes throughout, rendering it unusable by wheelchair users. As a direct result of

Defendant's failure to provide an accessible route, Plaintiff is deterred from safely accessing the Facility and experienced or could experience significant difficulty, risk of injury, and humiliation when attempting to navigate from the purported accessible parking spot. The absence of an accessible route subjects Plaintiff to the danger of falling into traffic or be forced to navigate hazardous terrain and moving vehicles. As such Plaintiff was deprived of the opportunity to participate in and benefit from the goods, services, and accommodations offered at the Subject Property, underscoring the urgent need for remedial action. The Plaintiff is effectively being denied full and equal access to the premises.

**<u>Interior Violations:</u>**

f. **Accessible Dining and Service Counter Violations:** Defendant's Subject Property fails to provide compliant accessible dining surfaces and an accessible sales and service counter, in violation of §§ 4.1.3(18), 4.32, and 7.2 of the 1991 ADAAG and §§ 226, 306, 902.3, and 904.4 of the 2010 ADAAG. Specifically, the dining tables available to patrons at the front of the facility measure approximately 36 inches in height, which exceeds the 34-inch maximum height permitted for accessible dining surfaces, and therefore do not provide a compliant surface for use by individuals who utilize wheelchairs. In addition, the service counter measures approximately 42 inches in height, exceeding the 36-inch maximum height permitted for an accessible portion of a sales or service counter. Although knee clearance beneath the dining tables was measured at approximately 34½ inches, the excessive table height nevertheless renders the dining surface inaccessible because the top surface itself is too high for compliant wheelchair use. These conditions

deny Plaintiff full and equal access to the dining and service amenities of the Subject Property, impede his ability to independently order, receive, and enjoy food and beverages in the same manner as nondisabled patrons, and therefore constitute unlawful architectural barriers under Title III of the ADA.

**Maintenance Violations:**

g.    **Maintenance Practices in General:** Defendant has violated the Americans with Disabilities Act (ADA), including 28 C.F.R. §§ 36.211 and 36.302, by failing to ensure that the Subject Property is maintained and operated in a manner that allows accessible features and routes to remain readily accessible where required, and by allowing ongoing conditions—such as obstructed interior routes, degraded parking markings, and stair-only access—to persist without correction. These ongoing conditions exclude individuals with disabilities from equal participation and access, perpetuating architectural barriers the ADA was enacted to eliminate, and necessitate judicial intervention and court-ordered compliance.

h.    **Ongoing and Systemic Non-Compliance**: Defendant has engaged in a continuous and systemic practice of operating the Facility in a condition that lacks required accessible features and routes, including accessible parking, access aisles, accessible routes from site arrival points, an accessible entrance, and unobstructed interior circulation, in violation of 28 C.F.R. § 36.211(a). These deficiencies are not isolated or temporary, but represent persistent non-compliance with ADA accessibility obligations.

i.    **Failure to Implement Maintenance Policies and Procedures:** Defendant has failed to adopt and enforce adequate policies or procedures to ensure that the

Facility is arranged, operated, and maintained so as to remain accessible and usable by individuals with disabilities, as required by 28 C.F.R. § 36.211(b). This failure includes permitting merchandise and equipment to obstruct interior circulation paths and allowing exterior access barriers to remain unremedied.

j.    **Knowledge and Foreseeability of Barriers:** Defendant knew or should have known of the accessibility barriers at the Subject Property, as the conditions at issue—including stair-only access from the parking lot and public sidewalk, visibly obstructed interior aisles, and the absence of accessible parking features—are open, obvious, and permanent or recurring in nature. Defendant's ongoing operation of a place of public accommodation imposes a continuing duty to identify, address, and correct such barriers.

k.    **Failure to Modify Discriminatory Maintenance Practices:** Despite its continuing obligations under 28 C.F.R. §§ 36.302 and 36.211, Defendant has failed to modify practices and conditions that effectively deny individuals with disabilities access to the Facility. As a result of Defendant's failure to correct these conditions and remove or remediate accessibility barriers, Plaintiff has been denied full and equal enjoyment of the goods, services, and accommodations offered at the Subject Property, in violation of 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.203. Defendant's ongoing non-compliance has deterred Plaintiff from returning to the Facility and will continue to cause harm unless remedied through injunctive and declaratory relief pursuant to 42 U.S.C. § 12188(a).

46.    The violations enumerated above may not be a complete list of barriers, conditions or violations encountered by Plaintiff and/or which exist at the Subject Property.

47.     Plaintiff requires an inspection of the Subject Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

48.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

49.     All of the violations alleged herein are readily achievable to modify to bring the Subject Property into compliance with the ADA.

50.     Compliance is readily achievable based on the approximate nature and cost of the necessary modifications, the Defendant's financial resources, and the minimal operational impact such changes would require. The Plaintiff contends that the Defendant has the ability and obligation to remove these barriers without significant difficulty or expense.

51.     Upon information and good faith belief, the removal of the physical barriers and hazardous conditions at the Subject Property is readily achievable, as defined by 42 U.S.C. § 12181(9), due to the Defendant Property Owner having the financial resources to make the necessary modifications.

52.     According to the St. Louis City Appraiser website, the parcel is valued at $46,700, indicating sufficient equity and financial capacity to address the accessibility violations. The Defendant's failure to utilize its resources to comply with the ADA and remove these barriers demonstrates a neglect of its legal obligations.

53.     By failing to comply with the ADA, the Defendant perpetuates discrimination against individuals with disabilities and disregards its duty under the ADA to ensure the Property is fully accessible and inclusive.

54.     The Plaintiff asserts that such remediation would not impose an undue burden on the Defendant, yet its continued inaction demonstrates a clear lack of commitment to compliance with federal law and the rights of individuals with disabilities.

55.     The removal of the physical barriers and hazardous conditions at the Property is readily achievable as defined by 42 U.S.C. § 12181(9), particularly given the financial incentives available to the Defendant both historically and prospectively. Under Internal Revenue Code § 44, the Defendant has been eligible for a tax credit of up to $5,000.00 annually for qualified accessibility expenditures, and under Internal Revenue Code § 190, the Defendant has also been eligible for a tax deduction for expenses related to the removal of architectural barriers. Despite the consistent availability of these financial incentives, the Defendant has failed to utilize them in the past and remains eligible to do so in the future. The availability of these benefits, coupled with the Defendant's repeated inaction, underscores the ease with which the necessary modifications could have been implemented and the Defendant's continued failure to meet its obligations under the ADA. This inaction highlights a disregard for both the financial resources at its disposal and the legal rights of individuals with disabilities.

56.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, 5200 Hampton, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

57.     Plaintiff's requested relief serves the public interest.

58.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant Property Owner.

59.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant Property Owner pursuant to 42 U.S.C. §§ 12188 and 12205.

60.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant Property Owner, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, 5200 Hampton, LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, 5200 Hampton, LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, 5200 Hampton, LLC, to (i) remove the physical barriers to access and (ii) alter the Subject Property to make it readily accessible to and usable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorney's fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

***THIS AREA INTENTIONALLY LEFT BLANK***

Dated this 20th Day of May, 2026.

RESPECTFULLY SUBMITTED,

/s/ *Michelle M. Funkenbusch*
Michelle M. Funkenbusch, MO Bar #48603

LAW OFFICE OF MICHELLE M. FUNKENBUSCH
2901 Dougherty Ferry Rd, Suite 100
St. Louis, MO 63122
Telephone: (314) 338-3500
Cell: (314) 799-6602
Fax: (314) 270-8103
Funkenbuschada@saintlouislegal.com
*Attorney for Plaintiff Chukwudi Bruno Njoku*